Kristin K. Mayes
Attorney General

Patrick J. Boyle, No. 031674
Assistant Attorney General
2005 North Central Avenue
Phoenix, Arizona 85004-1592
Telephone: (602) 542-3788
Fax:         (602) 542-3393
patrick.boyle@azag.gov
*Attorneys for Defendant Thornell*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mujahid Abdul-Malik Shabazz Ibn-Woods,<br><br>    Plaintiff<br><br>v.<br><br>Director Shinn, et al.,<br><br>    Defendants. | Case No. CV 22-00013-PHX-SPL (JZB)<br><br>**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Defendant Thornell, through undersigned counsel, pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, moves for summary judgment. This motion is supported by the following Memorandum of Points and Authorities and Defendant's concurrently filed Statement of Facts ("DSOF").

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     Introduction.**

Plaintiff, Mujahid Abdul-Malik Shabazz Ibn-Woods, filed his Second Amended Complaint on June 28, 2022. (Doc. 23.) Plaintiff alleged that his Eighth Amendment rights were being violated due to the conditions of confinement. (Doc. 23 at 11-12.) He alleged that the Arizona Department of Corrections Rehabilitation and Reentry ("ADCRR") has a long history of unconstitutional conditions in its maximum custody isolation units. (*Id.*) He further alleges he has numerous breathing problems and is subjected in his cell to inadequate ventilation, excessive heat, a lack of drinkable water,

and exposure to insects, rodents, and other vermin. (*Id.*) Finally, he alleges ADCRR is interfering with his health care because he is being deprived of an extension cord for his CPAP machine. (*Id.*) On screening, this Court ordered Defendant Shinn[1] to answer this claim in his official capacity only. (Doc. 25 at 13.)

**II.  Factual Summary.**

Plaintiff is an inmate in the custody of the ADCRR. (DSOF ¶ 1.) In June 2022 Plaintiff was housed at Arizona State Prison Complex ("ASPC") Eyman, Special Management Unit ("SMU"). (*Id.* ¶ 2.) On April 7, 2023, Plaintiff was reclassified and moved to ASPC Florence South Unit. (*Id.* ¶ 3.)

The ADCRR has a penological interest in ensuring the safe, secure, and orderly operations of the prison. (DSOF ¶ 4.) The ADCRR incarcerates over 47,000 prisoners in ten prison complexes throughout Arizona, as well as in private and contracted facilities. On average, it houses approximately 39,000 inmates. (*Id.* ¶ 5.) Each state prison complex is comprised of one or more housing units. (*Id.* ¶ 6.) The South Unit is one such housing unit at ASPC Florence. (*Id.* ¶ 7.)

Maximum custody inmates represent the highest risk to the public and staff. (DSOF ¶ 8.) Close custody inmates represent a high risk to the public and staff and also require controlled movement through the institution. (*Id.* ¶ 9.) Close custody inmates are typically entitled to more privileges than maximum custody inmates. (*Id.* ¶ 10.) Medium custody inmates represent a moderate risk to the public and staff. These inmates shall not work outside the secure perimeter of an institution and require limited controlled movement within the institution. (*Id.* ¶ 11.) Plaintiff is classified as a medium custody inmate. (*Id.* ¶ 12.)

Prior to coming to South Unit, Plaintiff was formerly housed at ASPC Eyman SMU West, a close custody sex offender housing unit. (DSOF ¶ 13.) SMU, a unit at

---

[1]  Defendant Shinn was sued in his official capacity and is no longer the Director of ADCRR. Current Director, Ryan Thornell, should therefore be substituted in his place and will be referenced as the Defendant filing this Motion throughout.

2

ASPC Eyman also has units for housing inmates in detention. (*Id.* ¶ 14.) These detentions units are separated from the close custody sex offender population. (*Id.* ¶ 15.) Detention units have multiple purposes but two primary uses are to house inmates awaiting protective custody review and to house inmates facing disciplinary charges. (*Id.* ¶ 16.) Inmates in detention are isolated from the general population for their own safety. (*Id.* ¶ 17.) This prevents inmates seeking protective custody from reprisals. (*Id.* ¶ 18.) This protects both the inmate facing the disciplinary charge from inmate interference in the disciplinary process as well as to protect staff and other inmates from inmates who are facing disciplinary charges for violent behavior. (*Id.* ¶ 19.)

Plaintiff was moved from the detention unit to SMU West on June 17, 2022. (DSOF ¶ 20.) SMU west is an entirely different housing structure than the detention unit. (*Id.* ¶ 21.) Inmates in close custody, including those housed in SMU West do not face the same restrictions as inmates housed in the detention unit. (*Id.* ¶ 22.) Shabazz was moved from SMU West to the South Unit on April 07, 2023. (*Id.* ¶ 23.) In the correctional context a "open yard" indicates a custody classification of medium custody or lower, and this includes the South Unit. (*Id.* ¶ 24.) The South Unit houses inmates in dormitory style housing and the inmates housed there also have fewer restrictions than inmates in higher custody levels. (*Id.* ¶ 25.)

As an Associate Deputy Warden ("ADW") Teresa Leonard walks the unit on a regular basis to observe the conditions and interact with staff and inmates. (DSOF ¶ 26.) Leonard has not observed the inmate housing areas to have poor ventilation. (*Id.* at ¶ 27.) Leonard has not observed the inmate housing areas to become excessively overheated, although there is a natural increase in temperature during the summer and a decrease in winter. (*Id.* ¶ 28.) Officers take the temperature of the housing areas on a regular basis and report the temperature daily. (*Id.* ¶ 29.) If the temperature is noted to be warmer than expected maintenance is contacted to address the issue. (*Id.* ¶ 30.) Leonard has not observed the unit to be overrun with any type of vermin. (*Id.* ¶ 31.) If Leonard did

3

observe, or staff or inmates brought to her attention, a problem with vermin she would take corrective action including contacting the pest control service ADCRR contracts with to provide regular pest control services. (*Id.* ¶ 32.) Inmates at the South Unit have ready access to drinkable water at all times. (*Id.* ¶ 33.) Inmates in the South Unit are not kept in isolation. South Unit has no cell environment housing. (*Id.* ¶ 34.) Inmate Shabazz has not been kept in isolation while in the South Unit. (*Id.* ¶ 35.)

Correctional officers are not medical professionals and do not have the authority, training, or ability to issue Specials Needs Order ("SNOs"), diagnose inmates, or offer non-emergency medical treatment. (DSOF ¶ 36.) Correctional officers are not in a position to make determinations regarding the appropriateness of providing medical accommodations to inmates. (*Id.* ¶ 37.) The eOmis medical database is accessible to medical personnel and limited ADC personnel responsible for supervising inmate medical care. (*Id.* ¶ 38.) Leonard does not have access to eOmis, or any other inmate medical records including Health Needs Requests ("HNRs"). (*Id.*) Inmates may access Health Services of a non-emergency nature by making an appointment, for which there may be a charge. (*Id.* ¶ 39.) To make an appointment, inmates shall complete the HNR Form 1101-10ES. Inmates may also submit HNR's on the JPay tablet each inmate is provided. (*Id.*) Inmates must deposit the HNR form in the appropriately labeled drop box. (*Id.* ¶ 40.) In areas where inmates are secured in their cell, Health care staff shall pick up the HNRs from the inmates. (*Id.*) Health Services staff shall collect HNR forms from drop boxes daily, as designed by the Contract Health Site Manager. (*Id.* ¶ 41.) In close custody, the health care staff shall pick them up daily from the inmates. (*Id.*) Such a schedule shall include the requirement for a daily pick-up and shall not interfere with, or delay the scheduling of inmate appointments. (*Id.*) Correctional personnel do not have any involvement with HNR collection, processing, or the scheduling of medical appointments. (*Id.* ¶ 42.)

Leonard as an ADW, and the correctional staff below her, do not have any

involvement in an inmate's medical treatment plan. (DSOF ¶ 43.) They cannot make a healthcare provider provide medical services. (*Id.*) If Leonard, or correctional staff below her, need information on an inmate's medical needs, they have to consult with the contract medical staff. (*Id.* ¶ 44.) Plaintiff's CPAP machine is a medical device and correctional personnel do not have the ability or knowledge to maintain, repair, or clean the device. (*Id.* ¶ 45.) On June 29, 2023, Leonard personally investigated the status of Plaintiff's CPAP machine and learned from Plaintiff that his machine is working and that he has the equipment he needs to use it. (*Id.* ¶ 46.) Leonard has not been informed by any medical provider that inmate Shabazz needs to be housed in any different location due to his health needs. (*Id.* ¶ 47.)

**III.    Legal Analysis.**

    **A.    Summary Judgment Standard.**

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). If the movant meets its initial responsibility, the burden then shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Mere allegation or speculation cannot create a genuine dispute. *Witherow v. Paff*, 52 F.3d 264, 266 (9th Cir. 1995). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted).

### B. Plaintiff's Claim is Moot and He Cannot Recover Damages.

Plaintiff has been moved twice during this litigation. Where the prisoner is challenging conditions of confinement and is seeking injunctive relief, transfer to another prison renders the request for injunctive relief moot absent some evidence of an expectation of being transferred back. *Preiser v. Newkirk*, 422 U.S. 395, 402-03 (1975) *see also Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991) (per curiam).

Plaintiff was moved from the detention unit to SMU West on June 17, 2022. (DSOF ¶ 20.) SMU west is an entirely different housing structure than the detention unit. (*Id.* ¶ 21.) Inmates in close custody, including those housed in SMU West do not face the same restrictions as inmates housed in the detention unit. (*Id.* ¶ 22.) Plaintiff was moved from SMU West to the South Unit on April 07, 2023. (*Id.* ¶ 23.) In the correctional context a "open yard" indicates a custody classification of medium custody or lower, and this includes the South Unit. (*Id.* ¶ 24.) The South Unit houses inmates in dormitory style housing and the inmates housed there also have fewer restrictions than inmates in higher custody levels. (*Id.* ¶ 25.) Plaintiff simply is not exposed to the conditions of confinement that he alleged in Second Amended Complaint because he has moved to a medium custody facility. This medium custody facility is in fact the relief Plaintiff sought in an earlier motion for relief. (Doc. 24 at 7.) There is no evidence that Plaintiff is going to be transferred back to the SMU detention in the future. Therefore his claim is moot and must be dismissed.

Plaintiff also claimed that he cannot operate his medically necessary CPAP machine without an extension cord which he alleges prison officials have denied him. (Doc. 23 at 7.) Plaintiff was provided with the extension cord on October 17, 2022. (Doc. 31-2.) On June 29, 2023, ADW Leonard personally investigated the status of Plaintiff's CPAP machine and learned from Plaintiff that his machine is working and that he has the equipment he needs to use it. (DSOF ¶ 46.) Therefore Plaintiff has largely obtained the relief he seeks. Further, Plaintiff's CPAP machine is a medical

device and correctional personnel do not have the ability or knowledge to maintain, repair, or clean the device. (*Id.* ¶ 45.) If there are any ongoing issues with machine Plaintiff should address those issues with medical providers.

Additionally, Plaintiff cannot maintain a lawsuit for damages against state employees in their official capacities under 42 U.S.C. § 1983. *Hafer v. Melo*, 502 U.S. 21, 27 (1991) ("State officials sued for damages in their official capacity are not 'persons' for purposes of the suit because they assume the identity of the government that employs them."); *see also Gilbreath v. Cutter Biological, Inc.*, 931 F.2d 1320, 1327 (9th Cir. 1991) ("[A] state is not a 'person' for purposes of section 1983. Likewise 'arms of the State' such as the Arizona Department of Corrections are not 'persons' under section 1983.") (citation omitted). The Eleventh Amendment bars official-capacity suits against state employees for money damages. *Kentucky v. Graham*, 473 U.S. 159, 167 (1985). Plaintiff may maintain a lawsuit against ADCRR employees in their official capacity for prospective declaratory and injunctive relief. *Coalition to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012). Summary judgment should be granted as to Plaintiff's Eighth Amendment claim because he is no longer housed in the alleged deficient housing unit and cannot obtain damages from his official capacity suit.

### C. Plaintiff's Conditions of Confinement Do Not Violate the Eighth Amendment.

Plaintiff alleged that the conditions of confinement at his housing location, at SMU, violated his Eighth Amendment rights. (Doc. 23 at 10-11.) However, when Plaintiff wrote his Second Amended Complaint he was housed in a detention unit. (Doc. 23 at 20; DSOF ¶¶ 2, 20.) He has not been housed in detention since, and has instead been housed at ASPC Florence South Unit since April 7, 2023. (DSOF ¶ 23.) Plaintiff has provided no evidence that the conditions of the two units are substantially the same or even similar.

### 1. Conditions of Confinement standard.

The Eighth Amendment protects prisoners from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). Nonetheless, the Eighth Amendment is not a basis for broad prison reform; it requires neither that prisons be comfortable, nor that prisoners be provided every desirable amenity. *Rhodes v. Chapman*, 452 U.S. 337 (1981). Although prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care and personal safety, routine discomfort or inconvenience does not constitute a constitutional deprivation under the Eighth Amendment. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000).

Conditions of confinement may be restrictive and harsh; however, they cannot involve the "wanton and unnecessary infliction of pain" or be devoid of a legitimate penological purpose. *Rhodes*, 452 U.S. at 347. Where a prisoner alleges injuries stemming from unsafe conditions of confinement, prison officials may be held liable only if they acted with "deliberate indifference to a substantial risk of serious harm." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). The deliberate indifference standard involves an objective and a subjective prong.

First, the plaintiff must show that the alleged deprivation was "sufficiently serious" to rise to the level of an Eighth Amendment violation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)); *Johnson*, 217 F.3d at 731. Extreme deprivations are required to support an Eighth Amendment conditions-of-confinement claim. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citation omitted). "Only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth amendment violation." *Id.* (quotations and citations omitted). When determining whether an alleged deprivation is objectively sufficiently serious to support a constitutional claim, a court must consider the circumstances, nature, and duration of a deprivation. *Johnson*, 217 F.3d at 731-32.

"The more basic the particular need, the shorter the time it can be withheld." *Hoptowit v. Ra*y 682 F.2d 1237, 1259 (9th Cir. 1982), *abrogated in part on other grounds by Sandin v. Connor*, 515 U.S. 472 (1995).

Second, the plaintiff must show that the prison official acted with a "sufficiently culpable state of mind"; that is, that the official "kn[ew] of and disregarded an excessive risk to inmate health or safety . . . ." *Farmer*, 511 U.S. at 837; *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) ("the inmate must show that the prison officials had no 'reasonable' justification for the deprivation"). Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it. *Farmer*, 511 U.S. at 837-45. Mere negligence is insufficient to establish liability; the official's conduct must have been wanton. *Id.* at 835; *Frost*, 152 F.3d at 1128. Prison officials may avoid liability by presenting evidence that they lacked knowledge of the risk, or by presenting evidence of a reasonable, albeit unsuccessful, response to the risk. *Farmer*, 511 U.S. at 844-45.

### 2. There are no allegations that Plaintiff's current conditions are deficient.

Plaintiff fails to show the conditions he faces are sufficiently serious. Plaintiff was moved from the detention unit to SMU West on June 17, 2022. (DSOF ¶ 20.) SMU West is an entirely different housing structure than the detention unit. (*Id.* ¶ 21.) Inmates in close custody, including those housed in SMU West do not face the same restrictions as inmates housed in the detention unit. (*Id.* ¶ 22.) Plaintiff was moved from SMU West to the South Unit on April 7, 2023. (*Id.* ¶ 23.) In the correctional context a "open yard" indicates a custody classification of medium custody or lower, and this includes the South Unit. (*Id.* ¶ 24.) The South Unit houses inmates in dormitory style housing and the inmates housed there also have fewer restrictions than inmates in higher custody levels. (*Id.* at ¶ 25.)

9

1 | As an ADW, Leonard walks the unit on a regular basis to observe the conditions and interact with staff and inmates. (DSOF ¶ 26.) Leonard has not observed the inmate housing areas to have poor ventilation. (*Id.* ¶ 27.) Leonard has not observed the inmate housing areas to become excessively overheated, although there is a natural increase in temperature during the summer and a decrease in winter. (*Id.* ¶ 28.) Officers take the temperature of the housing areas on a regular basis and report the temperature daily. (*Id.* ¶ 29.) If the temperature is noted to be warmer than expected maintenance is contacted to address the issue. (*Id.* ¶ 30.) Leonard has not observed the unit to be overrun with any type of vermin. (*Id.*¶ 31.) If Leonard did observe, or staff or inmates brought to her attention, a problem with vermin she would take corrective action including contacting the pest control service ADCRR contracts with to provide regular pest control services. (*Id.* ¶ 32.) Inmates at the South Unit have ready access to drinkable water at all times. (*Id.* ¶ 33.) Inmates in the South Unit are not kept in isolation. South Unit has no cell environment housing. (*Id.* ¶ 34.) Inmate Shabazz has not been kept in isolation while in the South Unit. (*Id.* ¶ 35.) These conditions do not violate the Eighth Amendment.

Further, Plaintiff fails to show that any correctional officer, much less Defendant Thornell, "kn[ew] of and disregarded an excessive risk to inmate health or safety . . . ." *Farmer*, 511 U.S. at 837. Plaintiff has no allegations that the conditions of the South Unit violate the Eighth Amendment or are deficient. Plaintiff has likewise provided no evidence that he informed any correctional officer of the deficient conditions.

Further, Plaintiff has not provided any evidence of what his medical treatment plan entails. He has therefore not provided any evidence that correctional staff are interfering with or not following that medical treatment plan. He likewise has failed to show that correctional staff are aware of his medical treatment plan and are deliberately indifferent to its implementation or his medical needs. Summary judgment should be granted as to Defendant Thornell.

…

**IV.     Conclusion.**

For the reasons stated herein, the Defendant Thornell's Motion for Summary Judgment should be granted and Plaintiff's Second Amended Complaint should be dismissed as to claims against him.

RESPECTFULLY SUBMITTED this 5th day of July, 2023.

Kristin K. Mayes
Attorney General

*/s/ Patrick J. Boyle*
Patrick J. Boyle
Assistant Attorney General
*Attorneys for Defendant Thornell*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 5, 2023, I electronically transmitted the attached document to the Clerk of the Court using the ECF System.

I hereby further certify that on the same date, I served the attached document and Notice of Electronic Filing by mail on the following, who is not a registered participant of the CM/ECF System:

Mujahid A. Shabazz Ibn-Woods, #144838
ASPC-Eyman/South Unit
PO Box 8400
Florence, AZ 85132
*Plaintiff Pro Se*

/s/ D. Mari
AGO Legal Secretary

#11344665
LMS22-0296